IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| COLEEN BARCLAY, JENNIFER CULLENWARD, JUDITH JOHNSON, and GLENDA PRIBIL,<br><br>Plaintiffs,<br><br>vs.<br><br>MERCY HEALTH SERVICES-IOWA CORP., d/b/a MERCY MEDICAL CENTER-SIOUX CITY; TRINITY HEALTH CORPORATION; and TRINITY HEALTH-MICHIGAN,<br><br>Defendants. | No. C 07-4074-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING THE PLAINTIFFS' MOTION IN LIMINE** |

_____

In this action, plaintiffs Colleen Barclay, Jennifer Cullenward, Judith Johnson, and Glenda Pribil, who were all employed as nurses in the Post Anesthesia Care Unit (PACU) at Mercy Medical Center-Sioux City in Sioux City, Iowa, allege that they were sexually harassed by a male charge nurse. They also contend that, instead of responding to their complaints about harassment, their supervisors retaliated against them, leading to their constructive discharge or termination. Plaintiff Pribil also alleges that she was retaliated against for filing a worker's compensation claim. Thus, Barclay, Cullenward, and Johnson all allege that they were constructively discharged, in April or May of 2007, and Pribil alleges that she was wrongfully terminated in January of 2007.

The plaintiffs filed a Complaint (docket no. 1) on September 4, 2007, alleging sexual harassment and retaliation for complaining about sexual harassment in violation of federal and state law, and an Amended Complaint (docket no. 10) on March 24, 2008, adding plaintiff Pribil's claim of wrongful termination in retaliation for filing a worker's

compensation claim. The Complaint and Amended Complaint named as defendants Mercy Health Services-Iowa Corp., doing business as Mercy Medical Center-Sioux City; Mercy Health Network, Inc., doing business as Mercy Medical Center-Sioux City; Trinity Health Corporation; and Trinity Health-Michigan. The defendants, all represented by the same counsel, filed joint Answers to both the Complaint and Amended Complaint denying the plaintiffs' claims.

On November 11, 2008, three of the original four defendants, Mercy Health Network, Inc., Trinity Health Corporation, and Trinity Health-Michigan, filed a Motion For Partial Summary Judgment (docket no. 27) asserting that none of these defendants were the plaintiffs' "employer" for purposes of their state or federal claims. Original defendant Mercy Health Services-Iowa Corporation, doing business as Mercy Medical Center-Sioux City, did not join in the motion, apparently because the parties agreed that Mercy Health Services-Iowa Corporation was the plaintiffs' direct employer. On March 20, 2009, the court granted the Motion For Partial Summary Judgment as to Mercy Health Network, Inc., in light of the plaintiffs' concession that Mercy Health Network, Inc., was *not* their "employer," but denied the motion as to defendants Trinity Health Corporation and Trinity Health-Michigan.

Trial in this matter was recently continued from April 13, 2009, to September 8, 2009, owing to conflicts in the court's schedule.

This matter comes before the court pursuant to the plaintiffs' March 10, 2009, Motion In Limine (docket no. 41). In their Motion In Limine, the plaintiffs seek to exclude two categories of evidence: (1) evidence of the defendants' status as religious non-profit corporations and any argument that the defendants' motives and actions in this case were based on such status; and (2) evidence of the defendants' offer of reinstatement to plaintiffs Cullenward, Johnson, and Barclay. The defendants filed their Resistance (docket

no. 44) on March 20, 2009, resisting exclusion of any of the challenged evidence. Therefore, the court will consider the challenged categories of evidence in turn. However, the court must first recount the standards applicable to the present motion.

As a preliminary matter, the court notes that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. The court concludes that preliminary determination of the admissibility of the evidence put at issue in the plaintiffs' Motion In Limine will likely serve the ends of a fair and expeditious presentation of issues to the jury.

It appears that the plaintiffs' Motion In Limine is based, at least in large part, on relevance and potential prejudice pursuant to Rules 401, 402, and 403. Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not. Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

3

FED. R. EVID. 403. As the Eighth Circuit Court of Appeals has recently explained,

> Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

*United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007); *United States v. Farrington*, 499 F.3d 854, 858-59 (8th Cir. 2007). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)).

Where evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice of such

evidence. *See, e.g, United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

The plaintiffs first seek to exclude evidence of the defendants' status as religious non-profit corporations and any argument that the defendants' motives and actions in this case were based on such status. They argue that this type of evidence or argument would be completely irrelevant and would tend to prejudice the jury to have sympathy for the defendants and raise the plaintiffs' burden of proof. They assert that any alleged relevance of such evidence or argument would be outweighed by the danger of unfair prejudice pursuant to Rule 403 of the Federal Rules of Evidence. They assert, further, that the standard jury instruction informing the jurors that they should not treat defendants differently because they are corporations is enough to protect the defendants' interests.

The defendants counter that the evidence of their corporate identities is undeniably relevant, although they do not explain precisely how, and that any potential negative effects of evidence that the defendants are religious non-profit corporations can be remedied by appropriate limiting instructions, although, again, they propose no such limiting instructions identifying proper and improper purposes of such evidence. Second, the defendants contend that it is fair to say that some members of the public are generally aware that Mercy Medical Center-Sioux City is a Catholic-affiliated-not-for-profit organization, so that the defendants should be permitted to conduct *voir dire* of potential jurors regarding any potential religious bias against the defendants. Third, the defendants argue that, if the court does not grant their Motion For Partial Summary Judgment (which the court did not do), the jury will need to decide issues raised in that motion, including

5

the relationships among the defendants, to which their Catholic identity and not-for-profit status are integral facts. The defendants, thus, assert that the plaintiffs' Motion In Limine would preclude them from explaining the corporate relationships and offering pertinent arguments about why liability should not be imposed upon Trinity Health Corporation and Trinity Health-Michigan. Fourth, the defendants assert that the plaintiffs have listed numerous exhibits that would reveal the defendants' non-for-profit status and Catholic identity, so that the plaintiffs appear to want to use such evidence when it might benefit them. Finally, the defendants assert that their non-profit status is relevant to the jurors' determination of punitive damages issues, if the court submits such issues to the jury.

In its ruling on the defendants' Motion For Partial Summary Judgment, the court left for the jury the question of the corporate relationship among the defendants and, more precisely, whether Trinity Health Corporation and Trinity Health-Michigan lack the necessary domination of the operations of Mercy Health Services-Iowa Corporation (or, for that matter, Mercy Medical Center-Sioux City) or lack any link to the individual employment decisions at issue in this case to be held liable as "employers" on the plaintiffs' claims. *See Brown v. Fred's, Inc.*, 494 F.3d 736, 739 (8th Cir. 2007) (stating standards for determining when a parent corporation is the "employer" of employees of a subsidiary). The court agrees with the defendants that the defendants' non-profit status is relevant to an understanding of the corporate relationships among the defendants, which is, in turn, relevant to the question of who is the plaintiffs' "employer" and who can be held liable in this case for harassment and retaliation. The court also agrees with the defendants that their financial status is generally relevant to an award of punitive damages, *see Carter v. Kansas City Southern Ry. Co.*, 456 F.3d 841, 846 (8th Cir. 2006), and, more specifically, that some courts have recognized that a corporate defendant's non-profit status is relevant to an award of punitive damages. *See, e.g., Bryce v. Trace, Inc.*, 2008 WL

906142, *3-*4 (W.D. Okla. March 31, 2008). Thus, the challenged evidence of the defendants' non-profit status is relevant within the meaning of Rule 401 and admissible pursuant to Rule 402. Although the defendants contend that the Catholic identity is also "integral" to understanding the relationship among the defendants, the court is far less convinced that is the case. Nevertheless, the court finds that the defendants' Catholic identity is an unavoidable fact of the relationship among the defendants, and may provide relevant context to the way in which the corporations are operated, whether or not it is "integral" to their relationships in ways pertinent here. Certainly, excluding evidence of the defendants' Catholic identity or affiliation is impracticable, as the plaintiffs' exhibits identified by the defendants show. Thus, although the probative value of such evidence is less than the probative value of the evidence of the defendants' non-profit status, the court finds that the defendants' Catholic identity is also relevant to matters at issue in this case pursuant to Rule 401 and admissible pursuant to Rule 402.

The court does not find that such evidence should be excluded on the grounds of potential prejudice pursuant to Rule 403, either. Specifically, although there is perhaps some potential for "anti-Catholic" or "pro-Catholic" prejudice from identification of the defendants as Catholic-affiliated entities, and perhaps even some sympathy or antipathy to their non-profit status, *see* FED. R. EVID. 403, Advisory Committee Notes (an "improper basis" for a jury's decision is "commonly, though not necessarily, an emotional one"), the court finds that an adequate limiting instruction is sufficient to protect both the plaintiffs' and the defendants' interests. *See Walker*, 470 F.3d at 1275 ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."). Such an instruction would advise the jurors that they must consider and decide the case as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations

7

in life, without regard to the defendants' corporate status, non-profit status, or religious affiliation, and that the jurors must give the same fair consideration to all parties. Potential religious or other biases may also be probed by the court and the parties during jury selection.

Therefore, the plaintiffs' Motion In Limine will be denied as to evidence of the defendants' status as religious non-profit corporations.

The plaintiffs also seek to exclude any argument that the defendants' motives and actions in this case were based on their religious non-profit status. The defendants make no argument concerning exclusion of this subcategory of evidence. Specifically, they do not assert any "ministerial" or other religion-based exception or defense to the plaintiffs' sexual harassment and retaliation claims. *See, e.g., Scharon v. St. Luke's Episcopal Presbyterian Hospitals*, 929 F.2d 360 (8th Cir.1991); *Weissman v. Congregation Shaare Emeth*, 38 F.3d 1038, 1044 n.6 (8th Cir. 1994). Therefore, the plaintiffs' Motion In Limine will be granted as to any argument that the defendants' motives and actions in this case were based on their religious non-profit status.

The plaintiffs also seek to exclude evidence of the defendants' offer of reinstatement to plaintiffs Cullenward, Johnson, and Barclay. The plaintiffs acknowledge that Julie Anfinson, the Director of Human Resources for Mercy Medical Center-Sioux City, sent a letter to plaintiffs Cullenward, Johnson, and Barclay, offering them positions at Mercy, and they acknowledge that the offers were expressly not conditioned on compromising their pending suits. The plaintiffs offered reinstatement assert that they have declined the offers of reinstatement owing to the sexually hostile work environment that they endured at Mercy and the lack of sufficient explanation as to how the conditions that led to their constructive discharges have been eliminated. They also assert that, following receipt of the purported reinstatement letters, they attempted to discover more information about the

job offers, including requests for documents about the decision to make the offer, but the defendants refused to provide such documents, citing attorney-client and work-product privileges.

As one ground for exclusion of the evidence concerning the reinstatement offers, the plaintiffs contend that the defendants are attempting to use the privileges on which they relied to block discovery about the background to the reinstatement offers as both a "sword" and a "shield" by attempting to show the jury that they offered the plaintiffs reinstatement, and that the plaintiffs' damages should be limited accordingly, but at the same time refusing to provide discovery responses about the circumstances under which the job offers were made. The plaintiffs contend that the defendants' state of mind and reasoning behind the offers is relevant to the validity of the offers, so that the defendants' refusal to respond to discovery bars them from adequately addressing the effect of the purported reinstatement offers. Thus, they contend that the defendants' conduct with regard to discovery concerning the reinstatement offers would make the defendants' offer of evidence of purported reinstatement offers unfairly prejudicial.

The defendants respond that this portion of the plaintiffs' Motion In Limine is really a disguised, but untimely, motion to compel discovery and, as such, this part of the motion should be denied. They also contend that the motion fails on the merits, because this is not a situation in which they are using attorney-client and work-product privileges as both a "sword" and a "shield," because they are not asserting any "advice of counsel" defense, and because they are not selectively revealing some privileged communications while protecting others. The defendants also argue that their state of mind and reasoning in making the offers of reinstatement is not relevant, because the question is an objective one, whether a reasonable person would refuse the offers. The defendants contend that there is no good faith basis for the plaintiffs to contend that the reinstatement offers are not

9

unconditional. Thus, the defendants contend that the reinstatement offers are relevant to the plaintiffs' damages claims and not otherwise inadmissible.

The court agrees with the defendants that, to the extent that this portion of the plaintiffs' Motion In Limine is a very belated motion to compel discovery, it will be denied. *See Doctor John's, Inc. v. City of Sioux City, Iowa*, 2007 WL 5788, *3-*4 (N.D. Iowa Jan. 20, 2007) (Zoss, Mag. J.) (denying a motion in limine as a tardy motion to compel for which no good cause had been shown as required by local rules, where the motion sought to discover documents that the opposing party had identified in a privilege log more than a year earlier). The court also agrees with the defendants that the plaintiffs' argument that the defendants are attempting to use privilege as both a "sword" and a "shield" is misplaced, because there is no indication that the defendants are making selective disclosures of privileged information. *Compare Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1020 (N.D. Iowa 2004) ("[A] party 'cannot selectively assert privilege to block the introduction of information harmful to his case after introducing other aspects of his conversation with [counsel] to his own benefit.'") (quoting *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998)).

As to the relevance of the evidence of the reinstatement offers, when an employee rejects an employer's unconditional job offer, the rejection ordinarily ends the accrual of potential backpay liability for alleged discrimination or other misconduct. *Smith v. World Ins. Co.*, 38 F.3d 1456, 1463 (8th Cir. 1994) (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 241 (1982)). On the other hand, if the plaintiff reasonably rejects an offer of reinstatement, then the offer does not terminate the accrual of backpay damages. *Id*. "The 'refusal of a reinstatement offer is measured by an objective standard: "Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement."'" *Id*. 1463-64 (quoting *Morris v.*

*American Nat'l Can Corp.*, 952 F.2d 200, 203 (8th Cir. 1991), in turn quoting *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808 (8th Cir. 1982)). Thus, evidence that reinstatement offers were made in this case to three of the plaintiffs is relevant to those plaintiffs' damages and, as such, is admissible pursuant to Rules 401 and 402.

The plaintiffs contend that the evidence should nevertheless be excluded, because they have been prevented from obtaining information about the *defendants'* state of mind and reasoning in making the offers. The defendants contend that the question has nothing to do with their subjective state of mind, but with the objective question of whether a reasonable person *in the recipients' shoes* would have accepted or refused the offers. As the Eighth Circuit Court of Appeals explained in *Smith*, the factfinder must determine the terms of the offer of reinstatement and the circumstances surrounding it and whether, in the totality of the circumstances, a reasonable person would refuse the offer. *Smith*, 38 F.3d at 1464. The factors impacting that determination in the case before that court included the plaintiff's lack of faith in the offer and discomfort with it; his fear that nothing in the offer would prevent the defendant from "turning the screws or doing whatever" to him if he returned; whether he would make more or less money if he returned and whether any increased income was "worth it" if he had no guarantees about how long he would be employed with the defendant; his concern that negative performance evaluations would not be expunged from his record, and his desire not to return with such evaluations in his record; his concern with whether things would change in the work environment and behavior of the defendant; and his concern that the timing of the offer, nearly three years after he left the defendant's employment, indicated that the offer was made in bad faith. *Id*. While these factors focus on the reasonableness of a plaintiff's impressions of and concerns with the offer, they do, to some extent, encompass a defendant's mental state, reasoning, or good faith in making the offer. On the other hand, in this case, the source

11

of any "prejudice" to the plaintiffs' ability to prove the defendants' mental state, reasoning, or bad faith from evidence for which the defendants have asserted privilege arises from the untimeliness of the plaintiffs' attempt to overcome the defendants' assertion of privilege. It is the parties' obligation to fill out the "totality of the circumstances" in which the offers were made for the factfinder to determine the reasonableness of the plaintiffs' refusals of those offers. The evidence of the reinstatement offers is not, itself, unfairly prejudicial, so that it is not excludable pursuant to Rule 403.

Upon this record, that part of the plaintiffs' Motion In Limine seeking to exclude evidence of the defendants' offer of reinstatement to plaintiffs Cullenward, Johnson, and Barclay will be denied.

THEREFORE, the plaintiffs' March 10, 2009, Motion In Limine (docket no. 41) is **granted in part** and **denied in part**, as follows:

1. That part of the plaintiffs' Motion seeking to exclude any argument that the defendants' motives and actions in this case were based on their religious non-profit status is **granted**, but that part of the plaintiffs' Motion seeking to exclude evidence of the defendants' status as religious non-profit corporations is **denied**; and

2. That part of the plaintiffs' Motion seeking to exclude evidence of the defendants' offers of reinstatement to plaintiffs Cullenward, Johnson, and Barclay is **denied**.

**IT IS SO ORDERED.**

**DATED** this 6th day of April, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA